Miles N. Clark, Esq.
Nevada Bar No. 13848
**Law Offices of Miles N. Clark, LLC**
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
Fax: (702) 552-2370
Email: miles@milesclarklaw.com
Website: http://www.milesclarklaw.com

*Local Counsel*

Douglas J. McNamara*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 800
Washington, D.C. 20005
P: (202) 408-4600
dmcnamara@cohenmilstein.com
*Counsel for Plaintiffs Trent Burger and Parthena Vorgiatzidis*

James J. Pizzirusso*
**HAUSFELD LLP**
1200 17th NW, Suite 600
Washington, D.C. 20036
P: (202) 540-7200
jpizzirusso@hausfeld.com
*Counsel for Plaintiffs Trent Burger and Parthena Vorgiatzidis*

John A. Yanchunis*
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
P: (813) 223-5505
jyanchunis@ForThePeople.com
*Counsel for Plaintiff Julie Jackson*

Amy Keller*
**DICELLO LEVITT LLP**
10 North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: (312) 214-7900
akeller@dicellolevitt.com
*Counsel for Plaintiffs Trent Burger and Parthena Vorgiatzidis*

*Pro hac vice forthcoming

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **IN RE: BOYD GAMING CORP. BREACH LITIGATION**<br><br>This Document Relates To: All Actions | Case No. 2:25-cv-01814-GMN-EJY<br><br>**MOTION FOR APPOINTMENT AS INTERIM CLASS COUNSEL** |

The undersigned represent Plaintiffs Trent Burger, Parthena Vorgiatzidis and Julie Jackson in the now-consolidated cases known as *In re Boyd Gaming Corp. Breach Litigation*. They respectfully request that the Court appoint Amy Keller, Douglas J. McNamara, James J. Pizzirusso, and John A. Yanchunis as Interim Co-Lead Class Counsel and Miles N. Clark as Interim Liaison Counsel (the "KMPY Group"). Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, the KMPY Group brings the necessary experience and thoughtfulness required to efficiently litigate this important action.

## I.   INTRODUCTION

Selecting experienced counsel to lead privacy or information security litigation is critical to ensuring plaintiffs' claims are effectively presented and strategically pursued against well-resourced defendants. Skilled attorneys bring deep knowledge of complex privacy laws, cybersecurity issues, and the procedural nuances that can make or break a class action. Here, the experience (and credentials) of the KMPY Group makes them best suited to secure favorable outcomes, navigate technical evidence, and maximize compensation for those harmed by data breaches in an efficient manner.

Ms. Keller, Mr. McNamara, Mr. Pizzirusso, and Mr. Yanchunis have the necessary credentials and experience to lead this case with a streamlined structure that is "right-sized" for the scope of the breach at issue here. Together with Mr. Clark, they are "best able" to represent the class because:

- They have already performed thorough work and investigation on this case including through the retention of well-seasoned and experienced experts in the areas of liability and damages:

- They have extensive knowledge and experience in all aspects of privacy and data breach litigation, including through class certification and trial, and greater experience in gaming-related data breach cases in this district, in particular;

- Their firms have extensive resources and far greater numbers of attorneys than any other applicants for co-leadership; and

- They have created an efficient and lean team to streamline work and reduce bloat given the size of the case.

First, the KMPY Group has diligently investigated and prosecuted this case to date. They have already retained prominent experts to assist them with prosecuting these cases. These experts are well-seasoned, experienced, and have provided expert assistance on issues of liability and damages in many of the largest data breach cases to date. Additionally, the KMPY Group has retained experienced investigators to scrutinize available information to probe the root cause of the breach, the identity of the cyber criminals, the misuse of the information taken by the cyber criminals, and the identification of potential witnesses.

Second, the KMPY Group possess extensive knowledge of and significant experience with the applicable laws related to data breach litigation, particularly with regard to the gaming industry. They have litigated and resolved every one of the largest and most prominent data breaches in the country (and several in this district), and have successfully demonstrated Article III standing, certified cases for class treatment, developed applicable damage models, and obtained appropriate injunctive relief programs. Their experience and knowledge in this field is unparalleled. Importantly, unlike some other applicants who have not appeared in other gaming-related data breach cases, their members have served as Co-Lead counsel in all ***three*** major gaming cases in this district to date, *Smallman v. MGM Resorts Int'l*, 2:20-cv-00376 (*MGM I*);[1] *Owens v. MGM Resorts Int'l,* 2:23-cv-01480 (*MGM II*):;[2] and *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-CV-01447-ART-BNW (*Caesars*).[3] While other applicants may have led data breach cases, none can match the experience of this team. The KMPY Group's attorneys also have unprecedented experience taking privacy cases and other class actions to trial (and prevailing—most recently in a privacy case against Google where the jury returned a verdict of over $425

---

[1] Mr. McNamara and Mr. Yanchunis were appointed Co-Lead Counsel. 2:20-cv-00376, ECF No. 93.

[2] Mr. Pizzirusso was appointed a Co-Lead in *MGM II*. 2:23-cv-01480, ECF No. 55.

[3] Mr. McNamara, Mr. Yanchunis, and Ms. Keller were appointed Co-Lead Counsel and Mr. Pizzirusso was appointed to the Plaintiffs' Steering Committee. 2:23-cv-01447, ECF No. 79.

million for the class[4]). They have also reviewed and consulted on proposed federal and state legislation aimed at protecting consumers' personally identifiable information.

Third, the KMPY Group has the resources and financial wherewithal to prosecute this case with the care that Plaintiffs and the putative class deserve. Hailing from renowned and national class action firms, the KPMY Group's law firms have deep benches—over 1,500 attorneys, collectively—to draw from in the event the litigation grows or requires additional resources. Without the need to spread assignments among many, different firms, the KPMY Group's lean structure reduces any outside firm's "learning curve," saving time, energy, and effort, to ensure the best and most efficient representation for the putative class.

Finally, KMPY can litigate this case with a lean and efficient team of four co-lead counsel (as the Court appointed in *MGM I*) and do not require a large team of steering committee members to garner support. The work that the firms have done in other cases speaks for itself, and the KPMY Group is prepared to repeat their prior successes in this case.

For these reasons and those detailed further below, the KMPY Group's attorneys are best positioned to represent those consumers in these consolidated actions under Federal Rule of Civil Procedure 23(g).

## II.   BACKGROUND

On September 23, 2025, Boyd Gaming Corporation announced to its investors that it had experienced a "cybersecurity incident in which an unauthorized third party accessed [its] internal IT system."[5] In data breach notification letters which went out the following day, after informing investors of the breach, Boyd explained that it learned of the breach on September 6, 2025, and

---

[4]   *Rodriguez, et al. v. Google LLC, et al.*, No. 3:20-cv-04688, ECF No. 670 (N.D. Cal. Sept. 4, 2025).

[5]   Boyd Gaming Corporation, Form 8-K (Sept. 23, 2025), https://www.sec.gov/ix?doc=/Archives/edgar/data/0000906553/000119312525213546/d20726d8k.htm. *See also Berger, et al. v. Boyd Gaming Corp.*, No. 25-cv-01902, ECF No. 1 ¶ 3 (D. Nev. Oct. 6, 2025) ("*Berger* Compl.," now consolidated with other cases in the above-captioned matter).

1  that an unauthorized actor was able to exfiltrate sensitive data of employees and "a limited number
2  of other individuals" between September 5 and September 7, 2025.[6] The information exposed is
3  the most sensitive information needed to commit fraud and identity theft: names, dates of birth,
4  and Social Security numbers.

5       As additional information and rumors of the breach began to trickle out online, members
6  of the KPMY Group retained experts to begin investigating the breach, carefully determining
7  whether victims of the breach had standing to bring suit, as well as the potential damages they
8  suffered. After a careful (but swift) investigation, the undersigned brought separate, independent
9  actions, and have now decided to work together for the best interests of the putative class members.

## III.  LEGAL STANDARD

The Court has already determined—in accordance with Rule 23(g)—that appointment of counsel is necessary in this matter. ECF No. 8 at ¶ 7. As this District has previously recognized, in accordance with Rule 23(g)(1)(A), there are "four factors courts must consider when appointing interim class counsel," which include, in addition to "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class":

> 1. the work counsel has done in identifying or investigating potential claims in the action;
> 2. counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> 3. counsel's knowledge of the applicable law; and
> 4. the resources that counsel will commit to representing the class.

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-CV-01447-ART-BNW, 2024 WL 2959279, at *2 (D. Nev. June 12, 2024) (citing Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) and 23(g)(1)(B)). Given competing applications, "the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

---

[6]   *Berger* Compl. ¶¶ 3-4.

4

## IV. ARGUMENT

### A. KMPY Have Thoroughly Identified and Investigated the Claims

There was no proprietary investigation here. All counsel learned of the data breach through Boyd's SEC filings, press releases, and their clients' notice letters, and all counsel identified and investigated potential claims in this action and filed their own independent complaints within weeks of one another. No case has advanced past the initial pleadings stage, and any appointed counsel will work to file a consolidated complaint that merges the various allegations and representative plaintiffs from all the applicable cases.

There is also nothing proprietary about this case suggesting that the first cases on file developed unique facts out of their own investigation or somehow had inside knowledge that no one else had. "Absent evidence that the first-to-file should be credited with conducting substantial investigative efforts to ferret out the alleged improprieties, no weight is generally accorded to the timing of a particular plaintiff's complaint." *In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844, 2002 WL 31988203, at *1 (N.D. Ohio Aug. 5, 2002) (citing *In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71, 82 (S.D.N.Y. 2000)). Where "each group has engaged in a substantial amount of time and effort identifying and investigating the potential claims of the putative class action," the first factor would not favor any group. *In re Caesars*, 2024 WL 2959279, at *3.

### B. KMPY Have Extensive Experience and Knowledge in Data Breach Cases

*Proposed Co-Lead Amy E. Keller, DiCello Levitt LLP (Résumé Ex. A)*

Ms. Keller is the managing partner of DiCello Levitt LLP's Chicago office, where she also chairs the firm's privacy, cybersecurity, and technology litigation practice, primarily focusing on data breach litigation and consumer protection. Although recognized as one of the "new faces" leading MDLs, she has significant experience leading consumer and technology cases.

Since founding her firm's technology practice group in 2018, she has been appointed to lead more MDLs than any other woman in the past ten years. She became the youngest woman to lead an MDL with her appointment in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 17-md-02800 (N.D. Ga.), where she worked to secure as much as $505.5 million in cash relief and

$1 billion in required security upgrades by the company. In other matters, she has established new precedent recognizing novel theories for damages related to cryptocurrency losses, as well as securing millions of dollars in debt relief for victims of another data breach by a title company lender. *See Debt Cleanse Group Legal Services, LLC v. GoTo Technologies USA, Inc., et al.*, No. 22-cv-12047 (D. Mass.) (data breach case against LastPass involving the theft of data "lockers" containing passwords); *Kolstedt v. TMX Finance Corporate Services, Inc., et al.*, No. 23-cv-00076 (S.D. Ga.) (data breach case involving automotive title loans, resulting in a $35 million settlement). She recently argued before this District to secure the complete denial of a defendant's motion to dismiss in the data breach case pending against Caesars and also serves as one of five co-lead counsel in an MDL in a "hub-and-spoke" data breach, where defendants' motion to dismiss was also largely denied. *See In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-CV-01447-ART-BNW, 2025 WL 2393024, at *1 (D. Nev. Aug. 15, 2025); *In re Snowflake, Inc., Data Sec. Breach Litig.*, No. 2:24-md-03126-BMM, 2025 WL 3012889, at *17 (D. Mont. Oct. 28, 2025). She has also served in leadership capacities in other large class actions, achieving significant victories for clients and class members. *In re Fairlife Milk Products Marketing and Sales Practices Litig.*, No. 1:19-cv-03924, MDL No. 2909 (N.D. Ill.) (co-lead counsel, $21 million common fund created for a class settlement related to "humane-washing" claims); *In re Apple Inc. Device Performance Litigation*, No. 5:18-md-2827-EJD (N.D. Cal.) (Plaintiffs' Executive Committee and Chair of Law and Briefing, maximum of $500 million settlement for class members related to diminished device performance).

Ms. Keller is a Certified Information Privacy Professional (a globally recognized credential requiring examination), is rated by Chambers & Partners for her work in cybersecurity litigation,[7]

---

[7] *See* Amy Keller, Chambers & Partners, https://chambers.com/lawyer/amy-e-keller-usa-5:25837517 (Band 1 for Litigation: Mainly Plaintiffs, Band 2 for Privacy & Data Security: Litigation). Ms. Keller is one of only five Plaintiffs' lawyers who are ranked. Mr. Pizzirusso and Mr. Yanchunis are also ranked. *See* Privacy & Data Security: Litigation, USA, Chambers & Partners, https://chambers.com/legal-rankings/privacy-data-security-litigation-usa-nationwide-5:2933:12788:1?l=en-GB.

6

and is an elected member of the American Law Institute. She serves on the Sedona Conference's Working Group 11, which focuses on advancing the law on issues surrounding technology, privacy, artificial intelligence, and data security, and also served on the drafting teams for both Model Data Breach Notification Principles and Statutory Remedies and the California Consumer Privacy Act. In 2020 and 2021, she was named by *The National Law Journal* as one of the Elite Women in the Plaintiffs' Bar; and the practice group which she chairs has won Practice Group of the Year in 2020, 2021, and 2022 by Law360 and in 2020 and 2022 by *The National Law Journal*. Ms. Keller is also recognized by Illinois Super Lawyers, was named a "trailblazer" by *The National Law Journal*, and one of the "40 Under Forty" by *Crain's Chicago*.

Ms. Keller's firm has significant resources which have helped her advance the practice of informational security and privacy. In addition to her firm's securities practice group, which regularly monitors disclosures like the one that led to the lawsuits before this Court, her firm also has a dedicated trial center, which has secured jury verdicts in some of the largest class action cases in the country.[8] In February 2025, DiCello Levitt also opened an office in Las Vegas, expanding its footprint into the Southwest.

### *Proposed Co-Lead Douglas J. McNamara, Cohen Milstein (Résumé Ex. B)*

Mr. McNamara is a partner at Cohen Milstein Sellers & Toll PLLC, where he has practiced consumer protection law for over two decades. The Cohen Milstein firm has earned recognition as a "class-action powerhouse" and one of "America's 25 Most Influential Law Firms." Its consumer protection group is "known for notching big wins for plaintiffs," and has been recognized as a Group of the Year by Law360 for several years running.

The firm has served in leadership positions in many data breach cases, where Mr. McNamara has led discovery efforts. This Court appointed him a co-lead counsel in *MGM I*, a data

---

[8]   *See, e.g., Siqueiros v. General Motors LLC*, No. 3:16-cv-07244, ECF No. 566 (N.D. Cal. Oct. 4, 2022) (a jury verdict amounting to $102.6 million); *Kashef, et al. v. BNP Paribas SA, et al.*, No. 1:16-cv-03228, ECF No. 1004 (S.D.N.Y. Oct. 17, 2025) (a jury verdict for three class members out of thousands, amounting to $20.75 million, tried together with attorneys from Hausfeld LLP).

breach exposing the personally identifiable identification of millions of guests. After avoiding dismissal and conducting fact discovery, the case settled for $45 million, receiving final approval on June 18, 2025. No. 2:20-cv-00379, ECF No. 262. He was appointed to co-lead a "hub-and-spoke" breach involving a major file transfer provider and hundreds of defendants, already achieving significant settlements. *In re MOVEit Customer Data Security Breach Litig.*, No. 1:23-md-03083 (D. Mass.). As mentioned previously, together with Ms. Keller and Mr. Yanchunis as co-lead counsel in *Caesars*, he represents millions of individuals and successfully overcame defendant's motion to dismiss based on his work from *MGM I*. Mr. McNamara also served on the Plaintiffs' steering committee in *Apple Inc. Device Performance Litig.*, and he has worked on other complex litigations including *Khoday et al. v. Symantec Corp. et al.*, Case No. 11- 0180 (D. Minn.) ($60 million settlement for deceptive practices regarding "download insurance"); and *In re Caterpillar Inc. C13 and C15 Engine Products Liability Litigation*, Case No. 1:14-cv-03722, (D.N.J.) ($60 million settlement for defective emission systems). In appointing Mr. McNamara as co-lead in *MGM I,* this Court recognized that he and his fellow co-leads "have 'had leadership roles in virtually every major consumer data breach case litigated to date'" and "have the knowledge, experience, and resources required to litigate this case." *MGM I*, ECF No. 93 (citations omitted).

Mr. McNamara has also taught as an adjunct professor at George Washington University School of Law. He has published articles in *Pace Law Review* and *Law360* on class action issues, and spoken at professional gatherings on class action practice. He is a member of the Sedona Conference Working Group 11 regarding cybersecurity and privacy, presenting on numerous panels related to information security and compliance issues. He has also testified before the Federal Rules Committee and worked with legislators on proposed consumer legislation.

### *Proposed Co-Lead James J. Pizzirusso, Hausfeld LLP (Résumé Ex. C)*

A**s** a founding member of Hausfeld and Chair of the firm's Data Breach practice group, Mr. Pizzirusso has achieved national renown and unmatched success over the past decade as one of the country's preeminent cybersecurity attorneys. Mr. Pizzirusso is currently a lead author in a

pioneering data breach treatise for *Lexis*. Hausfeld is the only plaintiffs' firm in the country ranked by Legal500 in Cyber Law. In 2025, Chambers & Partners ranked Mr. Pizzirusso (for the fifth year in a row) as a top lawyer in "Privacy and Data Security: Litigation." It described Mr. Pizzirusso as "a highly experienced litigator, noted for his successful track record acting for plaintiffs in high-stakes cybersecurity and privacy law class actions."[9] Hausfeld is also the only plaintiffs' firm in the country to be ranked (for the fourth year in a row) by Chambers in the category of Privacy & Data Security-Litigation, where they wrote: "Hausfeld's team is talented across the board, it contains some of the hardest-working and smartest lawyers."[10] *The National Law Journal* also named Mr. Pizzirusso as one of its "2023 Class Action/Mass Tort Trailblazers," and in 2017, as a "Cybersecurity Trailblazer." In 2021, *Law360* named him a "Cybersecurity & Privacy MVP."

Given his extensive expertise and accomplishments in this field, over 38 courts (including thirteen MDL judges) have appointed Mr. Pizzirusso personally to leadership positions in data breach class actions. He helped negotiate the two largest data breach settlements ever reached. Judge Thomas W. Thrash appointed Mr. Pizzirusso to the PSC and Settlement Committees in *In re Equifax, Inc.* (discussed above). Judge Brian C. Wimes appointed Mr. Pizzirusso as Co-Lead Counsel in *In re T-Mobile Data Security Breach Litig.*, MDL No. 4:21-md-03019-BCW (W.D. Mo.), where he secured a settlement valued at $500 million for the 70 million victims (where Ms. Keller also served on the Plaintiffs' Executive Committee). Judge Paul Grimm (ret.) appointed Mr. Pizzirusso as Co-Lead Counsel in *In re: Marriott International Inc., Customer Data Security Breach Litig.*, MDL No. 19-md-2879 (D. Md.), a breach impacting over 300 million customers. In Marriott, Mr. Pizzirusso became one of the few lawyers to litigate and certify a data breach case as a class action (his second). *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022) (later reversed on other grounds).

---

[9] James J. Pizzirusso, Chambers & Partners, https://chambers.com/department/hausfeld-llp-privacy-data-security-litigation-usa-5:2933:12788:1:193727.

[10] Hausfeld LLP, Chambers & Partners, https://chambers.com/department/hausfeld-llp-privacy-data-security-litigation-usa-5:2933:12788:1:193727.

1  Mr. Pizzirusso has also served in several leadership capacities or handled data breach matters in gaming data breaches in this District including *In re MGM II* (appointed Co-Lead Counsel); and *In re Caesar* (appointed to the PSC). He is a member of the Sedona Conference's Working Group 11, and frequently speaks at cybersecurity, regulatory, and compliance seminars, where industry professionals share practical strategies for managing cyber risk, navigating enforcement trends, and strengthening compliance programs.

### ***Proposed Co-Lead John A. Yanchunis, Morgan & Morgan (Résumé Ex. D)***

Mr. Yanchunis leads Morgan & Morgan's class action group, a successful and highly regarded nationwide practice focusing on class actions and complex consumer litigation. Morgan & Morgan is one of the largest (if not the largest) plaintiffs-only law firms in the country, with over 1,000 lawyers in offices in every state, including in Las Vegas .

Mr. Yanchunis has been a trial lawyer for 43 years, a career that began after the completion of a two-year clerkship with United States District Judge Carl O. Bue (Southern District of Texas, now retired).

He has been appointed and served in leadership positions in most of the largest data breach cases filed in the area of privacy and data breaches, including *In re Capital One Consumer Data Security Breach Litigation,* No. 1:19-MD-2915-AJT (E.D. Va.) (settlement for $190,000,000 approved for 98 million consumers). With almost no assistance from any other firms other than to assist in preparing their individual clients for deposition, Mr. Yanchunis and his two co-lead attorneys took this case almost to trial before Capital One and Amazon agreed to settle the case. In that litigation, Judge Trenga observed:

> This Court previously commended Class and Defense Counsel at the September 8, 2022 Final Approval Hearing for the "exceptional outcome for all the parties given the difficult legal issues," calling it an "outstanding result" attributed "in no small measure, to counsel, counsel's efforts, and . . . the level of competence and professionalism that they've brought to every aspect of this case." [Doc. No. 2261] at 30:19-31:3. The Court stands by that statement. Class Counsel effectively and efficiently pursued the case, resulting in purportedly the second largest data breach settlement to date, in addition to the injunctive relief.

*In re Capital One*, ECF No. 2269 at 3.

  Mr. Yanchunis has led or served in leadership positions in dozens of other data beach cases. *See, e.g., In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-MD-02752-LHK (N.D. Cal.) ($117.5 million common fund settlement for approximately 194 million U.S. residents and 270,000 Israeli citizens ); *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.,* No. 1:14-md-02583-TWT (N.D. Ga.) (total settlement value of $29,025,000); *In re Equifax* (discussed herein, member of the Plaintiffs' Steering Committee); *In re U.S. Office of Personnel Management Data Security Breach Litigation,* No. 1:15-mc-01394-ABJ (D.D.C.) ($60,000,000 common fund ); *In re Arthur J Gallagher Data Breach Settlement*, 1:22-cv-0137 (N.D. Ill. Feb. 27, 2025) (common fund settlement of $21 million); *In re Fortra File Transfer Software Data Security Breach*, No. 24-MD-03090-RAR (S.D. Fla Sept 17, 2025) ($20 million common fund); *Angus v Flagstar Bank, FSB*, No. 2:21-CV-10657(E.D. Mich.) (proposed common fund of $31.5 million).

  Mr. Yanchunis began work in privacy litigation in 1999 with the filing of *In re Doubleclick Inc. Privacy Litigation*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), alleging privacy violations based on the placement of cookies on the hard drives of internet users. Beginning in 2003, he served as co-lead counsel in the prosecution and settlement of privacy class action cases involving more than 200 million consumers and brought against the world's largest data and information brokers, including Experian, R.L. Polk, Acxiom, and Reed Elsevier (which owns Lexis/Nexis). *See Fresco v. Automotive Directions, Inc.*, No. 03-61063-JEM (S.D. Fla.); *Fresco v. R.L. Polk & Co. et al.*, No. 07-cv-60695- JEM (S.D. Fla.).

  In 2023, Mr. Yanchunis lead a team of lawyers in his firm advanced the law in data breach cases and obtained reversals of lower courts in the Eleventh Circuit and the Second Circuit Courts of Appeals. *Bohnak v. Marsh & McLennan Companies,* No. 22-319 (2d Cir. 2023), *Ramirez v. The Paradies Shops, LLC,* No. 22-12853-HH (11th Cir. 2023), and *Sheffler v. Americold Realty Trust,* No. 22-11789-CC (11th Cir. 2023). On December 7, 2023, he presented argument before the Fourth Circuit in the successful appeal of a lower court decision in *Ford v Sandhills Medical Ctr., Inc.*, No. 22-2268 (4th Cir. 2023), cert denied (2025), a class case arising out of a data breach at a

health care facility. He now serves as an appointed member of the newly formed Cyber Security and Privacy Subcommittee of The Florida Bar.

Mr. Yanchunis was recognized in 2020 and 2021 for the second year in a row by *Law360* as one of four MVPs in Cybersecurity and Privacy. Similarly, in 2016 and then in 2020, Mr. Yanchunis was recognized by *The National Law Journal* as a Trailblazer in the area of Cybersecurity & Data Privacy. In 2020, Mr. Yanchunis was named Florida Lawyer of the Year by the Daily Business Review, and in 2022, he was awarded the Best Mentor award in the state of Florida by the same publication. In 2023, he was named Consumer Lawyer of the Year by The Florida Bar's Consumer Protection Committee for his accomplishments in the area of data privacy, and a Titan of the Plaintiffs' Bar by *Law360*. In 2024, the class action practice group that he leads at his firm was awarded Litigation Department of the Year in the State of Florida by *ALM/Law360*, and his practice group was a national finalist for Litigation Department of the Year by *The National Law Journal*. This year, he received a Lifetime Achievement Award and was recognized by *Lawdragon* in several categories.

Because of his experience in cyber security and privacy and data breach litigation, he is a frequent speaker nationally and internationally. He has spoken on these topics on numerous occasions in London, Amersterdam, Haifa, Israel, and Lisbon. He also is a frequent lecturer at Baylor College of Law in its LLM program on cyber security, and spoke on the topics of data privacy in the Spring of this year at a symposium sponsored by Cleveland State College of Law.

Exhibiting his leadership skills and his ability to work collaboratively with others, Mr. Yanchunis has served in leadership positions on many professional committees and boards, most prominently as a member of the Board of Directors of The Florida Bar Foundation, a member of The Florida Board of Bar Examiners appointed by the Florida Supreme Court, and an elected member for two terms to The Board of Governors of The Florida Bar. He has served on The Florida Bar's Consumer Protection Committee, including serving as its Chair. He has also served as an expert in ethical issues in class litigation for The Florida Bar in disciplinary proceedings.

***Proposed Interim Liaison Counsel Miles N. Clark, Law Offices of Miles N. Clark***
***(Résumé Ex. E)***

Courts, in their discretion, "may appoint interim liaison counsel to assist interim lead counsel primarily with administrative matters." *Rubenstein v. Scripps Health*, No. 21-cv-1135-GPC(MSB), 2021 WL 4554569, at *4 (S.D. Cal. Oct. 5, 2021) (*citing Walker v. Discover Fin. Servs.*, No. 10-cv-6994, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011) and *Manual for Complex Litig.*, § 10.221 (4th ed. 2004) ("*Manual*") ("Liaison counsel will usually have offices in the same locality as the court" and are "[c]harged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions.").

Miles Clark focuses on federal litigation practice in the District of Nevada, particularly in the areas of fair credit reporting, debt collection, and consumer privacy. After extensive experience clerking in the federal court system, Mr. Clark is uniquely qualified to interpret and apply the District's Local Rules, as well as ensure that the District's general practices and preferences are satisfied. Consequently, appointment of Mr. Clark as liaison counsel will minimize the expense of litigation, as Mr. Clark understands the specific nuances of local practice without the necessity of excessive research costs, deliberation, or delay.

Mr. Clark focuses his practice on consumer law and privacy litigation at both the individual and class level. He is particularly experienced in data breach class action matters, having previously served on the Plaintiff's Steering Committee in *In re Sonic Customer Data Security Breach Litigation*, No. 1:17-md-2807 (N.D. Ohio 2017), a case he assisted in litigating to a multimillion-dollar class settlement. Mr. Clark was also appointed co-liaison counsel in the data breach class by this Court in *MGM I*. No. 2:20-cv-00376, ECF No. 93. He has worked with Morgan & Morgan's attorneys in several other data breach class action matters, including but not limited to *In re Brinker Data Incident Litig.*, No. 3:18-cv-686 (M.D. Fla.), and *Whittum v. University Medical Center of Southern Nevada*. No. A-21-839579-C (Eighth Jud. Dist. Ct. Nev.). He

frequently appears and argues before judges in the District of Nevada and in the United States Court of Appeals for the Ninth Circuit.

Mr. Clark is routinely recognized as a Super Lawyers Rising Star in the field of consumer law and has been included in *Nevada Business Magazine*'s "Legal Elite." Mr. Clark has lectured in consumer law at the UNLV William S. Boyd School of Law and is former member of the Howard D. McKibben American Inn of Court in Las Vegas.

### C. KMPY have the Necessary Resources to Devote to the Litigation.

The KMPY Group has ample resources to prosecute this litigation, from discovery through motion practice, trial, and appeals. *See* Bolch Judicial Institute, *Guidelines and Best Practices for Large and Mass-Tort MDLs* (2d ed. 2018), at 39 (Best Practice 3C(iii) (stating in part that applicants should "provide information about the resources they have available to contribute to the litigation"). Importantly, as with experience, the proposed leadership group's resources far eclipse those of any of the other firms who are seeking leadership in this litigation. *See, e.g., In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 187 (S.D.N.Y. 2008) (appointing one group because competitors did not "have resources comparable to those of the Firms" and holding that the "[f]irms' greater collective resources [including attorney count] weighs in favor of their appointment as interim co-lead counsel.").

DiCello Levitt, Cohen Milstein, Hausfeld, and Morgan & Morgan are widely acknowledged as some of the preeminent and most successful class action law firms in the world. Their resources are unmatched by their co-lead competitors—including a deep bench of litigators who may assist with this case, numerous and complementary practice groups, dedicated trial teams, in-house focus-group capabilities, and offices around the country (and, if needed, the globe). Collectively, they have recovered tens of billions of dollars for their clients in trials and settlements and courts have appointed the firm's attorneys to leadership positions in hundreds of cutting-edge class actions, many of which they have taken to trial (some of which have been discussed herein).

**D.    Other Factors Support the Appointment of the proposed leadership group.**

The KMPY Group has put forward an efficient and lean team that is modeled after the Court's prior order in *MGM I* with four co-lead counsel and a liaison counsel. A bloated structure with an extensive PSC is not warranted or necessary in this case.

The FJC's *Manual* has this to say on leadership structures in class actions:

> *Committees of counsel*. Often called steering committees, coordinating committees, management committees, executive committees, discovery committees, or trial teams. **Committees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making.**".

*Manual* § 10.221 at 25 (emphases added). The FJC further warned that such committees "can lead to substantially increased costs" as well as "unnecessary duplication of efforts." *Id*. There is no evidence here of a need for committees in a case of this size.

When evaluating competing leadership proposals, courts often reject bloated and overly complicated structures. For example, other recent contested data breach decisions have rejected oversized leadership structures with complicated committees. *E.g., In re SAV-RX Data Breach Litig.,* No. 8:24-cv-00204, 2024 WL 4557372, at *3 (D. Neb. Oct. 23, 2024) (appointed Co-Lead Counsel and rejecting Leadership Committee in data breach case); *In re Enzo Biochem Data Sec. Litig.,* No. CV-23-04282 (GRB) (AYS), 2023 WL 6385387, at *3-4 (E.D.N.Y. Sept. 29, 2023) (appointing two co-lead counsel and refusing to appoint an Executive Committee); *In re Harvard Pilgrim Data Sec. Incident*, No. 1:23-11211-NMG, 2024 WL 1075145, at *1 (D. Mass. Mar. 12, 2024) (finding Mr. Pizzirusso and Mr. Yanchunis and one other "are best suited to assume the role of the interim co-lead counsel based on the Rule 23(g) factors by virtue of their resources, experience in data breach litigation and industry recognition in that practice area" and declining to appoint an executive committee); *In re Data Security Cases against Nelnet Servicing, LLC*, No. 4:22CV3181, 2023 WL 1108253, at *6 (D. Neb. Jan. 20, 2023) (appointing smaller leadership group saying "the court must balance desire to create a 'dream team' with several co-lead firms against the competing considerations of efficiency and economy") (cleaned up); *In re Warner Music Grp. Data Breach*, 20 Civ. 7473 (PGG), 2021 WL 725728 at *3-4 (S.D.N.Y. Feb. 22, 2021)

15

(appointing co-lead counsel and refusing to appoint a five-firm Executive Committee); *In re DISH Network Data Sec. Incident Litig.*, Civil Action No. 1:23-CV-01168-RMR-SBP, 2023 WL 11964095, at *2 (D. Colo. Nov. 9, 2023) (noting that "the proposed committee, while clearly experienced, does not appear to add any expertise or resources that the three leading firms do not already have pertaining to data breach class actions"); *In re Capital One Consumer Data Security Breach Litig.*, No. 1:19-MD-2915-AJT, ECF No. 210 (E.D. Va.) (appointing three co-leads and declining to appoint a requested steering committee).

The KPMY Group has carefully reviewed the facts related to this case and determined that the "right size" to approach this litigation is a four-way co-lead structure with liaison counsel. Together, these attorneys will ensure that the case is efficiently managed to a fair and just resolution.

**V. CONCLUSION**

For the foregoing reasons the Court should appoint the KMPY Group as Interim Counsel.

Dated: October 29, 2025October 29, 2025                    Respectfully submitted,

*/s/ Miles N. Clark*
Miles N. Clark, Esq.
Nevada Bar No. 13848
Law Offices of Miles N. Clark, LLC
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
Fax: (702) 552-2370
Email: miles@milesclarklaw.com
Website: http://www.milesclarklaw.com

*Local Counsel*

John A. Yanchunis*
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
P: (813) 223-5505
jyanchunis@ForThePeople.com
*Counsel for Plaintiff Julie Jackson*

1
2  Douglas J. McNamara*
3  **COHEN MILSTEIN SELLERS & TOLL PLLC**
4  1100 New York Ave. NW, Suite 800
   Washington, D.C. 20005
5  P: (202) 408-4600
   dmcnamara@cohenmilstein.com
6
7  Amy Keller*
   **DICELLO LEVITT LLP**
8  Ten North Dearborn Street, Sixth Floor
   Chicago, Illinois 60602
9  P: (312) 214-7900
   akeller@dicellolevitt.com
10
11 James J. Pizzirusso*
   **HAUSFELD LLP**
12 1200 17th Street NW, Suite 600
   Washington, DC 20036
13 P: (202) 540-7200
   jpizzirusso@hausfeld.com
14
15 *Counsel for Plaintiffs Trent Burger and Parthena Vorgiatzidis*
16
17 *Pro hac vice pending
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via this Court's CM/ECF service, which will send notification of such filing to all counsel of record this 29th day of October 2025.

*/s/ Lucille Chiusano*
Lucille Chiusano
An Employee of Law Offices of Miles N. Clark

*Local Counsel*